AO 88A  (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
for the

_____ District of _____

|  |  |  |
|---|---|---|
| *Plaintiff* | ) ) | |
| v. | ) ) | Civil Action No. |
| *Defendant* | ) ) ) | |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:

*(Name of person to whom this subpoena is directed)*

❏ *Testimony:*  **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action.  If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

| Place: | Date and Time: |
|---|---|
|  |  |

The deposition will be recorded by this method: _____

❏ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

*CLERK OF COURT*

OR

_____          _____
*Signature of Clerk or Deputy Clerk*                         *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
_____, who issues or requests this subpoena, are:

### Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

Exhibit 1

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

Exhibit 1

AO 88A  (Rev.  02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

Exhibit 1

# EXHIBIT A TO SUBPOENA DUCES TECUM FOR JULY 7, 2016 DEPOSITION

## I. DEFINITIONS

1. **"Communication" and/or "communications."** This term refers to all means and types of correspondence, including letters, communications, facsimile, electronic mail, and electronic text messages whether in SMS or MMS form.

2. **"The Department"** means the Missouri Department of Corrections.

3. **"Document" and/or "documents."** These terms mean and include any documents or electronically stored information, including but not limited to all communications (as separately defined above), reports, memoranda, writings, statements, invoices, receipts, graphs, charts, data compilations, summaries or records of telephone conversations, summaries or records of personal conversations or interviews, catalogs, manuals, handbooks, drawings, studies, bulletins, announcements, pamphlets, brochures, minutes, notes, diaries or diary entries, calendars, schedules, tapes, sound or video recordings, contracts, agreements, tabulations, and any other written, typewritten, printed, drawn, photographic, and recorded matter not specified above which is in the possession, custody, or control of the Missouri Department of Corrections, their attorneys, agents, representatives, employees, or any other person or entity acting in their interest or on their behalf.

4. **"Lethal Injection Protocol(s)" and/or "Lethal Injection Procedure(s)."** These terms mean any policy or procedure promulgated by the Department to govern the execution of a prisoner. These terms include not only the documents which set forth the identity, dosage, and order of the drugs used in the lethal injection execution, but also documents which set forth the logistical steps taken by the department and its officers, agents, employees, and/or attorneys in the days leading up to an execution.

5. **"Policy or procedure," "policies," and "procedures."** These terms refer to both written or formal rules, as well as practices, customs, policies, and usages that may not have been officially approved, reduced to writing, or otherwise formalized.

6. **"Relating to," and/or "regarding."** These terms shall include the following: referring to, involving, pertaining to, constituting, comprising, containing, setting forth, showing, disclosing, describing, explaining, summarizing, or bearing upon.

7. **Singular and Plural Usage.** In this pleading, each singular word shall include its plural and vice versa, and the words "and" and "or" shall be construed disjunctively or conjunctively as necessary to make the request inclusive rather than exclusive.

## II. DOCUMENTS TO BE PRODUCED

1. All documents from 2010 to the present related to attempts of any kind, whether successful or not, to secure or purchase pentobarbital (either Nembutal or pentobarbital compounded from API) for use in executions in Missouri.

2. All drug labels and package inserts for any drug purchased or obtained by the Department, from 2010 to the present, for use in lethal injection executions.

3. The Department's Lethal Injection Protocols Lethal Injection Procedures in force from 2010 to the present.

4. All documents related to the process, if any, by which the Department determined that a single lethal dose of barbiturate, rather than a three-drug series including the use of a paralytic agent and potassium chloride, would be the method of lethal injection executions in Missouri, including, but not limited to:

   a. Any studies conducted by or for the Department regarding the use of a single dose of a barbiturate, rather than a three-drug series including the use of a paralytic agent and potassium chloride, as a method of execution.

   b. Any studies or other information known to the Department, whether conducted by or for the Department itself, regarding the use of a single dose of a barbiturate, rather than a three-drug series including the use of a paralytic agent and potassium chloride, as a method of execution.

   c. Any communications, whether written or oral, on paper or transmitted electronically or digitally, between any officer, agent, employee or attorney for the Department and any other person, corporation or other entity regarding the use of a single dose of a barbiturate, rather than a three-drug series including the use of a paralytic agent and potassium chloride, as a method of execution.

5. All documents related to the Department's potential use of pentobarbital compounded from API for use in lethal injection executions from 2010 to the present, including, but not limited to the following:

   a. Any studies, reports, memoranda, or analyses authored by, commissioned by, or received by the Department related to the use of pentobarbital compounded from API for purposes of lethal injection in Missouri;

   b. Any communications between the Department or any other person (including but not limited to pharmaceutical companies, pharmacies, compounding pharmacies, distributors of pharmaceuticals, hospitals, medical facilities, college or university faculty, or officers, agents, employees, or attorneys for the corrections departments in other states), related to the use of pentobarbital compounded from API in executions by lethal injection;

   c. Any documents (including, but not limited to, communications between or among employees of the Department), related to, regarding, or discussing whether the use of pentobarbital compounded from API comports with the Eighth Amendment prohibition against cruel and unusual punishment;

   d. The methods by which the Department stores sodium pentobarbital API prior to its compounding for use in lethal injection executions;

   e. All documents related to the process of compounding of pentobarbital API into injectable pentobarbital for use in lethal injection executions, including

any contracts with persons or entities for the compounding of pentobarbital API into injectable pentobarbital, any procedures or protocols of the person or entity responsible for compounding pentobarbital API into injectable pentobarbital, all test protocols, testing results, or representations of test results provided to the Department by the person or entity responsible for compounding pentobarbital API into injectable pentobarbital Any documents related to or discussing any and all potential changes to the Department's lethal injection procedures or protocol that might or would be necessitated by the use of pentobarbital compounded from API as the only drug in lethal injection executions in Missouri; and

  f. Any documents related to or discussing any and all potential changes to the identity, training, and qualifications of the personnel assigned to conduct lethal injection executions that might or would be necessitated by the use of pentobarbital compounded from API as the first drug in the execution series.

6. All documents related to process, if any, by which the Department determined that midazolam would, or would not be, used in lethal injection executions in Missouri. This topic includes, but is not limited to:

  a. Any studies conducted by or for the Department regarding the use of midazolam in lethal injection executions.

  b. Any studies or other information known to the Department, whether conducted by or for the Department itself, regarding the use of midazolam in lethal injection executions.

  c. Any communications, whether written or oral, on paper or transmitted electronically or digitally, between any officer, agent, employee or attorney for the Department and any other person, corporation or other entity regarding the use of midazolam in lethal injection executions.

7. From 2010 to the present, all documents related to and/or evincing any training attended by the Department's officers, employees, agents, or attorneys related to the conduct of executions by lethal injection. This request includes, but is not limited to, the following:

  a. Any documents provided to the Department's officers, employees, agents, or attorneys during or as a result of any such training;

  b. Any syllabi, training description, or schedule of any such training; and

  c. The names and qualifications of the persons who conducted or taught at any such training.

8. All communications from 2010 to the present between the Department, or any employee of, or attorney for, the Department, with any employee of, or attorney for, the corrections department or attorney general's office of any other jurisdiction, including but not limited to Mississippi, related to the selection, purchase, or exchange of drugs for purposes of lethal injection executions.

Exhibit 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

|  |  |
|---|---|
| **RICHARD JORDAN and RICKY CHASE,** | ) |
|  | ) |
| **Plaintiffs,** | ) |
|  | ) |
| **THOMAS EDWIN LODEN, Jr. and ROGER THORSON,** | ) |
|  | ) |
| **Intervenors,** | ) |
| *v.* | ) **Civil Action No. 3:15-cv-00295** |
|  | ) |
| **MARSHALL L. FISHER, Commissioner, Mississippi Department of Corrections, in his Official Capacity, et al.** | ) |
|  | ) |
| **Defendants.** | ) |
|  | ) |

## RE-NOTICE OF DEPOSITION OF A NONPARTY ORGANIZATION PURSUANT TO F.R.C.P. 30(B)(6)
### (Missouri Department of Corrections)

PLEASE TAKE NOTICE that Plaintiffs Richard Jordan and Ricky Chase, by and through their counsel of record, and pursuant to FED.R.CIV.P. 30(B)(6), will take the deposition of the Missouri department of Corrections ("the Department") at 10 am on **Thursday, July 7, 2016**, at the Department's Offices at 2729 Plaza Drive, Jefferson City MO 65102. The deposition will be recorded by court reporter and videographer. The deposition will proceed from day-to-day until finished.

Exhibit 1

Pursuant to Rule 30(B)(6) of the Federal Rules of Civil Procedure, the Department is required to designate one or more persons to testify on its behalf on the following matters for examination ("the Topics"):

**Topic No. 1**:  All efforts made by the Department from 2010 to the present to secure pentobarbital for use in lethal injection executions. This topic includes, but is not limited to, the following:

(a) The name, address, electronic mail address, and business telephone number of any individual, corporation, or other entity contacted by the Department with the purpose of purchasing or obtaining pentobarbital for use in lethal injection executions[1].

(b) The date of each such contact.

(c) The name, address, electronic mail address and business telephone number of any officer, agent, or employee of the Department who made any such contact.

(d) The contents of any telephone or in-person conversation between any officer agent or employee of the Department with any individual or officer, agent, employee or representative of the pentobarbital supplier.

(e) The contents of any written communication, whether invoice, letter, electronic mail, text message or other form of written communication, between any officer agent or employee of the Department with any individual or officer, agent, employee or representative of the pentobarbital supplier.

(f) The current location of any documents evincing any communication between any officer agent or employee of the Department with any individual or officer, agent, employee or representative of the pentobarbital supplier.

**Topic No. 2**:  All efforts made by the Department from 2010 to the present to secure sodium pentobarbital API to be compounded for use in lethal injection executions. This topic includes, but is not limited to, the following:

(a) The name, address, electronic mail address, and business telephone number of any individual, corporation, or other entity contacted by the Department with the purpose of purchasing or obtaining sodium pentobarbital API to be compounded for use in lethal injection executions[2].

---

[1] This person, corporation or other entity shall be referred to below as "the pentobarbital supplier."
[2] This person, corporation or other entity shall be referred to below as "the sodium pentobarbital API supplier."

Exhibit 1

(b) The date of each such contact.

(c) The name, address, electronic mail address and business telephone number of any officer, agent, or employee of the Department who made any such contact.

(d) The contents of any telephone or in-person conversation between any officer agent or employee of the Department with any individual or officer, agent, employee or representative of the sodium pentobarbital API supplier.

(e) The contents of any written communication, whether invoice, letter, electronic mail, text message or other form of written communication, between any officer agent or employee of the Department with any individual or officer, agent, employee or representative of the sodium pentobarbital API supplier.

(f) The current location of any documents evincing any communication between any officer agent or employee of the Department with any individual or officer, agent, employee or representative of the sodium pentobarbital API supplier.

**Topic No. 3**: The process, if any, by which sodium pentobarbital API has been compounded into injectable pentobarbital for use in lethal injection executions by the Department between 2010 and the present. This topic includes, but is not limited to:

(a) The individual, corporation, or other entity with which the Department is, or has in the past, compounded sodium pentobarbital API into injectable pentobarbital for use in lethal injection executions[3].

(b) Any contracts or other agreements between the Department and any officer, agent, employee or representative of the compounding pharmacy.

(c) Any communications, whether oral or written, whether on paper or electronically or digitally transmitted, between the Department and any officer, agent, employee or representative of the compounding pharmacy.

(d) Any procedures for testing the sodium pentobarbital API or the compounded injectable pentobarbital, to determine (1) the identity and potency of the drug and (2) the presence or absence of any substance not intended to be part of the compounded injectable drug.

(e) Any reports, whether authored by the Department, the compounding pharmacy, the FDA, or any other person or entity concerning or related to the performance of the compounding pharmacy or the laboratory performing testing on the compounded injectable pentobarbital.

---

[3] This individual, corporation or other entity shall be referred to below as "the compounding pharmacy."

Exhibit 1

**Topic No. 4**:   The storage of lethal injection drugs by the Department from 2010 to the present. This includes, but is not limited to:

(a) All policies, written procedures, or other protocols governing the storage of the drugs which are intended for use in lethal injection executions.

(b) The actual practice of the Department with respect to the storage of the drugs which are intended by the Department to be used in lethal injection executions.

(c) The name, address, electronic mail address, and business telephone number of all persons, whether individual or corporate or other entity, responsible for the storage of the drugs which intended by the Department to be used in lethal injection executions.

**Topic No. 5**:   The procedures used by the Department from 2010 to the present to execute a convicted offender by means of lethal injection. This topic includes, but is not limited to:

(a) The documents which set forth the identity, dosage, and order of the drugs used in the lethal injection execution.

(b) The documents which set forth the logistical steps taken by the department and its officers, agents, employees and/or attorneys in the days leading up to an execution.

(c) The documents which record the events during the process of a lethal injection execution, including but not limited to execution logs, autopsies, and other materials.

(d) The actual practice of the Department in the execution of convicted offenders by means of lethal injection.

**Topic No. 6**:   The process, if any, by which the Department determined that midazolam would, or would not be, used in lethal injection executions in Missouri. This topic includes, but is not limited to:

(a) Any studies conducted by or for the Department regarding the use of midazolam in lethal injection executions.

(b) Any studies or other information known to the Department, whether conducted by or for the Department itself, regarding the use of midazolam in lethal injection executions.

(c) Any communications, whether written or oral, on paper or transmitted electronically or digitally, between any officer, agent, employee or attorney for the Department and any other person, corporation or other entity regarding the use of midazolam in lethal injection executions.

**Topic No. 7**:   The process, if any, by which the Department determined that a single lethal dose of barbiturate, rather than a three-drug series including the use of a paralytic agent and potassium chloride, would be the method of lethal injection executions in Missouri. This topic includes, but is not limited to:

(a)     Any studies conducted by or for the Department regarding the use of a single dose of a barbiturate, rather than a three-drug series including the use of a paralytic agent and potassium chloride, as a method of execution.

(b)     Any studies or other information known to the Department, whether conducted by or for the Department itself, regarding the use of a single dose of a barbiturate, rather than a three-drug series including the use of a paralytic agent and potassium chloride, as a method of execution.

(c)     Any communications, whether written or oral, on paper or transmitted electronically or digitally, between any officer, agent, employee or attorney for the Department and any other person, corporation or other entity regarding the use of a single dose of a barbiturate, rather than a three-drug series including the use of a paralytic agent and potassium chloride, as a method of execution.

**Topic No. 8:** The training mandated by the Department from 2010 to the present for officers, employees, agents or attorneys with respect to the conduct of executions by lethal injection. This topic includes, but is not limited to:

(a) The professional and/or educational certifications required for employees within the Department to participate in any specific role in lethal injection executions.

(b) The documents provided to the Department's officers, employees, agents or attorneys during or as a result of any such training.

(c) The syllabi, training description, or schedule of any such training.

**Topic No. 9**:   Any communication between the Department and any officer, agent, employee, or attorney for the Mississippi Department of Corrections or the Mississippi Attorney General's Office regarding lethal injection executions. This topic includes, but is not limited to:

Exhibit 1

(a)     The contents of any telephone or in-person conversation between any officer agent or employee of the Department with any officer, agent or attorney of or for the Mississippi Department of Corrections or the Mississippi Attorney General's Office.

(b)     The contents of any written communication, whether invoice, letter, electronic mail, text message or other form of written communication, between any officer agent or employee of the Department with any officer, agent or attorney of or for the Mississippi Department of Corrections or the Mississippi Attorney General's Office.

(c)     The current location of any documents evincing any communication between any officer agent or employee of the Department with any officer, agent or attorney of or for the Mississippi Department of Corrections or the Mississippi Attorney General's Office.


Respectfully submitted,


*/s/ James W. Craig*_____
James W. Craig, MSB # 7798
Emily M. Washington (pro hac vice)
The Roderick & Solange MacArthur Justice Center
4400 South Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
jim.craig@macarthurjustice.org

Exhibit 1

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served this NOTICE OF DEPOSITION OF A NONPARTY ORGANIZATION PURSUANT TO F.R.C.P. 30(B)(6) (Missouri Department of Corrections) by electronic mail and United States Mail, first class, postage prepaid, to the following counsel for the parties to this case:

Counsel for the Defendants: Jason L. Davis (jadavi@ago.state.ms.us), Paul E. Barnes (pabarn@ago.state.us.ms), and Wilson D. Minor (wmino@ago.state.ms.us), Office of the Attorney General, P.O. Box 220, Jackson MS 39205.

Counsel for Intervenor Thomas E. Loden, Jr.: Stacy L. Ferraro (lifestoryms@gmail.com), 239 N. Lamar Street, Ste. 604, Jackson MS 39201 and Merrida P. Coxwell (merridac@coxwelllaw.com), Coxwell & Associates, P.O. Box 1337, Jackson MS 39215-1337.

Counsel for Intervenor Roger Thorson: Jim Davis (jamesLDavisIII@aol.com), Nika F. Aldrich (NAldrich@SCHWABE.COM), Matthew Klepper (Matthew.Klepper@dlapiper.com), and Richard Klawiter (richard.klawiter@dlapiper.com).

This the 9th day of June, 2016.


*/s/James W. Craig*