# UNITED STATES DISTRICT COURT FOR
# THE WESTERN DISTRICT OF MISSOURI

|  |  |  |
|---|---|---|
| Missouri Department of Corrections, | ) | |
| | ) | |
| Movant | ) | |
| | ) | |
| v. | ) | Case No. 2:16-MC-9005 |
| | ) | |
| Richard Jordan and Ricky Chase, | ) | |
| | ) | |
| Respondents. | ) | Related: 3:15-CV-00295 |
| | ) | (S.D. Miss.) |

## Suggestions in Support of
## Motion to Quash Non-Party Subpoena

**CHRIS KOSTER**
Attorney General

Gregory M. Goodwin
Assistant Attorney General
Missouri Bar # 65929
P.O. Box 899
Jefferson City, MO 65102
(573) 751-7017
(573) 751-3825 Fax
gregory.goodwin@ago.mo.gov
Attorneys for Missouri

# Table of Contents

I.   Introduction ............................................................................... 1

II.  Missouri has received a non-party subpoena from two condemned murderers in Mississippi. ................................................................. 1

III. Missouri's sovereign immunity prevents Jordan and Chase from enforcing the subpoena. .................................................................. 3

   A.   The Eleventh Amendment's purpose is to prevent the States from suffering coercive process in federal court. .................................... 4

   B.   In this Circuit, courts should enforce sovereign immunity when a subpoena threatens a state's autonomy. ......................................... 5

   C.   Jordan and Chase's subpoena threatens Missouri's autonomy by interfering with the death penalty. ............................................... 7

      1.   Missouri's autonomy is threatened because Price's subpoena seeks documents that will reveal the identities of members of Missouri's execution team, which will curtail Missouri's ability to carry out its lawful judgments. .................................................................... 8

IV.  Jordan and Chase's subpoena seeks information that is privileged. ...... 10

   A.   Missouri law protects the identities of Missouri's execution team. .... 10

      1.   Step one: Mo. Rev. Stat. 546.720.2 specifically creates a privilege against producing documents in response to a subpoena. ...................... 11

      2.   Step two: the confidentiality privilege is meritorious because it facilitates the enforcement of Missouri law. ............................................ 13

   B.   The common law state secrets privilege protects Missouri from disclosing information about execution team members and lethal chemicals. ................................................................................ 16

   C.   The common law deliberative process privilege protects Missouri from disclosing documents concerning pre-decision research about which lethal chemical to use in Missouri executions. ........................................ 20

V.   Jordan and Chase's subpoena is an undue burden on the State of Missouri. .................................................................................... 25

   A.   Missouri's method of execution is irrelevant to Mississippi's challenged method of execution. .................................................... 25

   B.   The subpoena places a unique burden on Missouri. ........................ 27

Conclusion ................................................................................... 29

Case 2:16-mc-09005-SRB   Document 3   Filed 06/09/16   Page 2 of 36

# Cases

*Alltel Communications, LLC., v. DeJordy*, 675 F.3d 1100 (8th Cir. 2012) 5, 6, 7

*American Civil Liberties Union of Mississippi v. Finch*, 638 F.2d 1336 (5th
    Cir. Unit A Mar. 1981) ............................................................................. 11, 13

*Baron Oil v. Downie*, 873 F.2d 67 (4th Cir. 1989) .............................................. 6

*Bonnet v. Harvest Holdings Inc.,* 741 F.3d 1155 (10th Cir. 2014) ................... 7

*Bray v. Lombardi*, 14AC-CC00044 (Cir. Ct. Cole County, Mar. 2016) ........... 13

*Bryan v. State*, 753 So.2d 1244 (Fla. 2000) ...................................................... 19

*Carr v. Monroe Mfg. Co.*, 431 F.2d 384 (5th Cir. 1970) .................................. 18

*Chase v. State*, 645 So.2d 829 (Miss. 1994) ...................................................... 2

*Enviropack Corp. v. Zenfinity Capital, LLC,* 2014 WL 4715384, 4:14-CV-
    00754-ERW slip op. at *5 (E.D. Mo. Sept. 22, 2014) ............................. 25, 27

*Ex Parte Ayers*, 123 U.S. 443 (1887) ................................................................ 4

*Glossip v. Gross*, 135 S. Ct. 2726 (2015) ................................................ 8, 15, 26

*Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30 (1994) ........................... 6

*Hodges v. Pfizer*, 2016 WL 1222229, No. 14-4855-ADM-TNL slip op. *2 (D.
    Minn. Mar. 28, 2016) ........................................................................... 26

*Hofer v. Mack Trucks, Inc.,* 981 F.2d 377 (8th Cir. 1992) ............................... 26

*Huthnance v. District of Columbia*, 268 F.R.D. 120 (D. D.C. Jun. 15, 2010) . 22

*In re Blodgett*, 502 U.S. 236 (1992) ................................................................ 9

Case 2:16-mc-09005-SRB   Document 3   Filed 06/09/16   Page 3 of 36

*In re Charter Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d 771 (8th Cir. 2005) ....................................................................... 4

*In re Hampers*, 651 F.2d 19 (1st Cir. 1981) ................................................ 11, 13

*In re Lombardi*, 741 F.3d 888 (8th Cir. 2014) (en banc) ................................. 12

*In re Missouri Dep't. of Natural Resources*, 105 F.3d 434 (8th Cir. 1997) 5, 6, 7

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) ........................................... 23

*In re Subpoena Duces Tecum*, 228 F.3d 341 (4th Cir. 2000) ............................ 7

*Jordan v. Epps*, 756 F.3d 395 (5th Cir. 2014) ..................................................... 1

*Kerr v. United States District Court for the Northern District of California*, 511 F.2d 192 (9th Cir. 1975) ......................................................................... 17

*Landrigan v. Brewer,* 625 F.3d 1132 (9th Cir.2010) (Kozinski, C.J., dissenting from denial of rehearing en banc) ................................................................ 19

*Landry v. F.D.I.C.*, 204 F.3d 1125 (D.C. Cir. 2000) ........................................ 21

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682 (1949) .............. 5

*Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922 (8th Cir. 1999) ................................................................. 25, 27, 28

*Montrose Chemical Corp. of California v. Train*, 491 F.2d 63 (D.C. Cir. 1974) ..................................................................................................................... 23

*N.R.L.B. v. Sears, Roebuck & Co.*, 421 U.S. 132 (1975).................................. 21

*National Wildlife Federation v. United States Forest Service*, 861 F.2d 1114 (9th Cir. 1988) ............................................................................................... 23

iii

*Pack v. Beyer*, 157 F.R.D. 226 (D. N.J. Apr. 5, 1994) ...................................... 17

*Porter v. Ray*, 461 F.3d 1315 (11th Cir. 2006) ................................................... 17

*Premium Serv. Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225 (9th Cir. 1975) ............................................................................................................... 16

*Ringo v. Lombardi*, 09-4095-CV-C-BP, Order Denying Motion to Unseal (W.D. Mo. Jan. 6, 2016) .................................................... 9, 14, 19, 29

*Ringo v. Lombardi*, 677 F.3d 793 (8th Cir. 2012) .......................................... 15

*Siegfried v. City of Easton*, 146 F.R.D. 98 (E.D. Pa. 1992) ............................. 17

*State ex rel. Health Midwest Development Group, Inc. v. Daugherty*, 965 S.W.2d 841 (Mo. 1998) .................................................................................. 12

*State ex rel. Mo. Ethics Comm'n v. Nichols*, 978 S.W.2d 770 (Mo. Ct. App. 1998) .............................................................................................................. 12

*State of Missouri ex rel. Shorr v. United States Army Corps of Engineers*, 147 F.3d 708 (8th Cir. 1998) .......................................................................... 21

*State of Missouri v. Fiske*, 290 U.S. 18 (1933) .................................................... 4

*Taylor v. Crawford*, 487 F.3d 1072 (8th Cir. 2007) ......................................... 15

*Taylor v. Nix*, 240 Fed. Appx. 830 (11th Cir. 2007) (unpublished) ................. 17

*Taylor v. Nix*, 451 F. Supp.2d 1351 (N.D. Ga. Sept. 13, 2006) ....................... 17

*Thomas v. FAG Bearings Corp.*, 50 F.3d 502 (8th Cir. 1995) ........................... 6

*Thompson v. Department of Corrections*, 18 P.3d 1198 (Cal. 2001) ............... 19

*United States v. Reynolds*, 345 U.S. 1 (1953) ................................................... 17

iv

*Winfield v. Lombardi*, 14AC-CC00263 (Cir. Ct. Cole County, Jun. 2014) ..... 13

*Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015) (en banc) ........................... 15

## Statutes

Mo. Rev. Stat. § 537.035 ................................................................... 12

Mo. Rev. Stat. § 546.720 ...........................................................passim

## Rules

Rule 26(b)(1) ..................................................................... 25

## Other Authorities

8 J. Wigmore, Evidence § 2258 (McNaughton rev. 1961) ................................ 13

Mary D. Fan, *The Supply-Side Attack on Lethal Injection and the Rise of Execution Secrecy*, 95 B.U. L. Rev. (Mar. 2015)........................................... 22

v

## I.  Introduction

Richard Jordan and Ricky Chase, Mississippi death row inmates, have issued a non-party subpoena to the Missouri Department of Corrections seeking documents and information about the source of the lethal chemical used in Missouri executions, and information that would reveal the identity of execution team members.

The Court should quash the subpoena for five independent and adequate reasons. First, the subpoena violates sovereign immunity. Second, the production of documents or testimony will reveal information protected by Missouri law: the identity of execution team members. Third, the information Jordan and Chase seek is protected by the common law state secrets privilege. Fourth, some of the information is protected by the common law deliberative process privilege. Fifth, the subpoena is unduly burdensome.

## II.  Missouri has received a non-party subpoena from two condemned murderers in Mississippi.

In 1976, Richard Jordan gained access to Edwina Marter's home by pretending to be from the electric company. *Jordan v. Epps*, 756 F.3d 395, 399 (5th Cir. 2014). He then abducted her, took her to a secluded area in the woods, and shot her in the head while she was either running away or on her knees. *Id*. Jordan's goal was to receive ransom money. *Id*. Jordan has been tried, convicted, and sentenced to death four times. *Id*. During the

1

investigation, Jordan was evaluated by Dr. Davis, who reported that Jordan blamed the murder on the FBI because "they blundered the job in following the instructions." *Id.*

In 1989, Ricky Chase and an accomplice robbed Elmer and Doris Hart. *Chase v. State*, 645 So.2d 829, 836 (Miss. 1994). Chase and his accomplice began the robbery while Elmer was away selling vegetables. *Id.* During the robbery, Chase and his accomplice tied up Doris, and then took jewelry, a .12 gauge shotgun, a .22 rifle, a .30–.30 rifle, and a .38 pistol. *Id.* Then Elmer returned home and tried to free his wife. *Id.* at 837. Chase shot Elmer in the head with Elmer's .38 pistol, and looted Elmer's body. *Id.* Chase and his accomplice used the proceeds to buy beer and cigarettes, even though Chase still had blood on his clothes. *Id.*

After exhausting direct appeal, post-conviction relief, and federal habeas, Jordan and Chase filed a suit challenging Mississippi's method of execution. On May 31, 2016, they served a subpoena for documents and testimony on the Missouri Department of Corrections seeking information related to Missouri's method of execution.

Their subpoena seeks documents that would reveal the source of Missouri's lethal chemical and the identities of members of the execution team. *See* Exhibit 1, p. 4–6. For example, Jordan and Chase specifically request "all documents...related to attempts of any kind, whether successful

2

or not, to secure or purchase pentobarbital." Exhibit 1, p. 4. That request will reveal the identity of members of the execution team, and will reveal the source of Missouri's lethal chemical. The remainder of the requests— although for different documents—lead to the same result.

Moreover, the subpoena for testimony indicates that the topics will include questions that would reveal the source of Missouri's lethal chemical and the identities of Missouri's execution team. *See* Exhibit 1, p. 8–13. For example, some deposition topics specifically request this information. *See* Exhibit 1, p. 8–9 (topic 1, example (a); topic 2, example (a); topic 3, example (a)). Other deposition topics request information that will lead to the identities of the supplier and other members of the execution team. *See* Exhibit 1, p. 10 (topic 4; topic 5).

## III. Missouri's sovereign immunity prevents Jordan and Chase from enforcing the subpoena.

Jordan and Chase cannot force Missouri to comply with this non-party subpoena because Missouri has sovereign immunity. The Eleventh Amendment protects states from threats to their autonomy. Producing the confidential information will curtail Missouri's ability to enforce its lawful criminal judgments, thereby vitiating Missouri's autonomy as a sovereign state.

3

**A.    The Eleventh Amendment's purpose is to prevent the States from suffering coercive process in federal court.**

The Eleventh Amendment functions as a limitation of the judicial power described in Article III. *State of Missouri v. Fiske*, 290 U.S. 18, 25 (1933). "The very object and purpose of the Eleventh Amendment was to prevent the indignity of subjecting a state to the coercive process of judicial tribunals at the instance of private parties." *Ex Parte Ayers*, 123 U.S. 443, 505 (1887). "While state sovereign immunity serves the important function of shielding state treasuries and thus preserving 'the States' ability to govern in accordance with the will of their citizens,' [] the doctrine's central purpose is to 'accord the States the respect owed them as' joint sovereigns." *Id*. at 765. State "sovereign immunity applies regardless of whether a private plaintiff's suit is for monetary damages or some other type of relief." *Id*. (internal citation omitted).

A subpoena issued to non-party is an order from a federal district court. *See In re Charter Communications, Inc., Subpoena Enforcement Matter*, 393 F.3d 771, 777–78 (8th Cir. 2005) (forcing the clerk to issue a subpoena invokes the court's power). No subpoena can exceed the bounds of Article III. Subpoenas are also coercive; compliance with a subpoena is not optional. The subpoena at issue in this case is exactly the type of interference that the Eleventh Amendment was designed to prevent. *See Larson v. Domestic &*

4

*Foreign Commerce Corp.*, 337 U.S. 682, 704 (1949) (explaining it is inappropriate "to permit a court to exercise its compulsive powers to restrain the [sovereign] from acting, or to compel it to act").

## B. In this Circuit, courts should enforce sovereign immunity when a subpoena threatens a state's autonomy.

Although some courts refuse to protect states from non-party subpoenas, no court has considered a sovereign immunity defense from a subpoena that seeks confidential information and documents about lethal chemicals used in executions. In the absence of direct authority, this Court should draw upon the general principals of state sovereign immunity and the three Eighth Circuit case on the general topic.

Jordan and Chase are likely to argue that the Eighth Circuit has summarily held that "[t]here is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." *In re Missouri Dep't. of Natural Resources*, 105 F.3d 434, 436 (8th Cir. 1997) (*MDNR*). But *MDNR* court only held that Missouri failed to satisfy its burden under that case's particular facts. Moreover, the language in *MDNR* has been called into serious question. *Alltel Communications, LLC., v. DeJordy*, 675 F.3d 1100, 1104–05 (8th Cir. 2012).

In *MDNR*, Missouri was served with a Rule 45 subpoena seeking documents from Missouri's investigation into the detection of hazardous

5

substances in Newton County's water supply. *Id*. at 435. Missouri produced some documents, asserted others were privileged, and moved to quash the subpoena. *Id*. The district court denied the motion to quash, and Missouri sought a writ of mandamus. *Id*. The Eighth Circuit denied the writ, noting that Missouri had "not *shown how production* of these documents *infringes on* the State of *Missouri's autonomy*..." *Id*. at 436 (emphasis supplied).

*MDNR* follows an earlier case, *Thomas v. FAG Bearings Corp*., 50 F.3d 502 (8th Cir. 1995). In *Thomas*, a civil defendant attempted to join Missouri as a plaintiff in the Newton County water suit. *Thomas*, 50 F.3d at 503–02. The Eighth Circuit held that coercively joining Missouri violated the Eleventh Amendment, in part, because coercive joinder "undermines the two aims of the Eleventh Amendment: protection for a state's autonomy and protection for its pocketbook." *Id*. at 506, *citing Hess v. Port Auth. Trans-Hudson Corp*., 513 U.S. 30 (1994).

Recently, the Eighth Circuit has called *MDNR*'s language into question. In *Alltel*, the Eighth Circuit considered whether a tribe could claim tribal immunity to avoid a non-party subpoena. *Alltel*, 675 F.3d at 1102. The Eighth Circuit suggested that *MDNR* might be wrongly decided under the rationale in *Larson* and *Baron Oil v. Downie*, 873 F.2d 67, 70–71 (4th Cir. 1989). *Alltel*, 675 F.3d at 1104–05. The Eighth Circuit acknowledged that non-party subpoenas "command a government unit to appear in federal court

6

and obey whatever judicial discovery commands may be forthcoming. The potential for severe interference with government functions is apparent." *Id*.

Moreover, the Eighth Circuit posited that the Supreme Court "might well conclude that the Eleventh Amendment applies when a "disruptive third-party subpoena[] that would clearly be barred in a State's own courts [is] served on a state agency in private federal litigation." *Id*. That is precisely the case here. As demonstrated in point IV.A., *infra*, Missouri courts applying Missouri law would quash the subpoena. There can be no dispute that the subpoena would be disruptive. Indeed, the disruption would be so great that it would threaten Missouri's autonomy.

Reading *Thomas, MDNR*, and *Alltel* together demonstrates that sovereign immunity protection is appropriate when Missouri shows "how production of these documents infringes on the State of Missouri's autonomy" *MDNR*, 50 F.3d at 436.

## C. Jordan and Chase's subpoena threatens Missouri's autonomy by interfering with the death penalty.

Jordan and Chase's subpoena is essentially a suit against Missouri for the production of documents. *See, e.g., Bonnet v. Harvest Holdings Inc.,* 741 F.3d 1155, 1159–60 (10th Cir. 2014), *quoting In re Subpoena Duces Tecum*, 228 F.3d 341, 348 (4th Cir. 2000) ("the issuance of a subpoena initiates an adversary process that can command the production of documents and things

7

*only after judicial process is afforded*") (emphasis in original). Compliance with the subpoena violates Missouri's autonomy by interfering with Missouri's ability to conduct lawful executions.

**1. Missouri's autonomy is threatened because Price's subpoena seeks documents that will reveal the identities of members of Missouri's execution team, which will curtail Missouri's ability to carry out its lawful judgments.**

For years, Missouri has been forced to protect the identities of the execution team in state and federal courts. Justice Alito has asked if the federal courts should "countenance" "a guerrilla war against the death penalty, which consists of efforts to make it impossible for the states to obtain drugs that could be used to carry out capital punishment with little, if any, pain?" Oral Argument at 12:30, *Glossip v. Gross*, 135 S. Ct. 2726 (2015) (No. 14-7955). The answer is no. And yet, this subpoena is merely the latest front of the guerrilla war.

Jordan and Chase's subpoena seeks documents that relate to the type and source of Missouri's lethal chemical, the individuals who train and therefore administer the lethal chemical, and Missouri's efforts to obtain the lethal chemical. The deposition notice directly indicates that Jordan and Chase will seek to learn the identity of the supplier and other members of the execution team. Exhibit 1, p. 8–9.

8

If Missouri complies with Jordan and Chase's subpoena, Missouri will be forced to provide information that will likely reveal, or could reveal, the identity of execution team members. Moreover, as Director Lombardi has explained, confidentiality is the *sine qua non* of Missouri's implementation of the death penalty. *See* Exhibit 2. This Court has already found that,

> if the identity of execution team members is compromised there is a substantial risk that they will be subjected to harassments and invasions of privacy. The Court further finds that this outcome would compromise the State's ability to perform its governmental functions.

*Ringo v. Lombardi*, 09-4095-CV-C-BP, Order Denying Motion to Unseal at *10 (W.D. Mo. Jan. 6, 2016).[1]

Simply put, complying with the subpoena will interfere with Missouri's ability to enforce the death penalty. Missouri's ability to exercise "its sovereign power to enforce the criminal law" is "an interest [the Supreme Court] found of great weight..." and is the very heart of Missouri's autonomy as a co-equal sovereign state. *In re Blodgett*, 502 U.S. 236, 239 (1992). The subpoena threatens this sovereign power; therefore, the subpoena threatens Missouri's autonomy.

Because the subpoena threatens Missouri's autonomy, this Court should quash the subpoena.

---

[1] Larry Flynt and the ACLU, the parties seeking the documents, have filed a notice of appeal. The case is not yet briefed. *See Larry Flynt v. George Lombardi, et al.,* Case Nos. 16-1295 & 16-2232 (8th Cir.).

**IV.    Jordan and Chase's subpoena seeks information that is privileged.**

The records that Jordan and Chase seek through their subpoena are privileged for three reasons: first, a Missouri statute creates a privilege for records that would reveal the identity of an execution team member, including the lethal chemical supplier. Second, the information is protected by the federal common law privilege of state secrets, because revealing the information will impede, impair, and interfere with Missouri's governmental functions to such a degree that the documents must remain secret. And third, some of Jordan and Chase's requests are barred by the deliberative process privilege because some of the requests seek information that cannot be separated from the process by which the Department chose to use pentobarbital.

**A.    Missouri law protects the identities of Missouri's execution team.**

Missouri has enacted a non-disclosure law that protects the identities of members of the execution team. Mo. Rev. Stat. § 546.720.2. Jordan and Chase have requested documents that will identify how Missouri selected its current lethal chemical, how Missouri obtains that lethal chemical, who obtains the lethal chemical, and which lethal chemical is used, among other things. Because the documents Jordan and Chase have requested would

10

reveal the identities of Missouri's execution team, they are privileged in federal court.

Many decisions have considered whether a state statute creates a privilege against production in federal court. The Eighth Circuit has explained that federal courts undertake a two-step analysis. *In re Lombardi*, 741 F.3d 888, 894 (8th Cir. 2014) (en banc). First, would the state courts recognize that their statute creates a privilege? Second, is the privilege meritorious in the federal court's judgment? *See In re Hampers*, 651 F.2d 19, 21–23 (1st Cir. 1981); *American Civil Liberties Union of Mississippi v. Finch*, 638 F.2d 1336, 1343 (5th Cir. Unit A Mar. 1981). The Missouri state courts would recognize that Section 546.720's confidentiality provision creates a privilege. Furthermore, the privilege is meritorious.

1. **Step one: Mo. Rev. Stat. 546.720.2 specifically creates a privilege against producing documents in response to a subpoena.**

Missouri law makes records that could reveal the identity of an execution team member "confidential" *and* provides that such records "shall be privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion for disclosure to any person or entity, the remainder of such record shall not be privileged or closed unless protected from disclosure by law." Mo. Rev. Stat. § 546.720.2. When the Eighth Circuit en banc

11

considered the state secrets privilege, it acknowledged that it was a "significant and complex" issue. *Lombardi*, 741 F.3d at 895. During its examination, the Court cited to *State ex rel. Mo. Ethics Comm'n v. Nichols*, 978 S.W.2d 770, 773 (Mo. Ct. App. 1998). Under *Nichols*, Section 546.720 *does* create a privilege.

In *Nichols*, the Missouri state court explained that a statute does not create a privilege when it merely states a record is confidential. *Nichols*, 978 S.W.2d at 773. Other Missouri state courts have followed the rationale in *Nichols*. *See State ex rel. Health Midwest Development Group, Inc. v. Daugherty*, 965 S.W.2d 841, 842–43 (Mo. 1998). In *Daugherty*, the Missouri Supreme Court found that a Missouri statute that used the phrase "are privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion" created a privilege. *Id.* at 843, *citing* Mo. Rev. Stat. § 537.035.4. However, the Missouri Supreme Court refused to apply the privilege because the statute also contained a carve-out where the privilege did not apply. *Id.*, *citing* Mo. Rev. Stat. § 537.035.5.

Under Missouri law, § 546.720.2 creates a privilege.[2] The plain text of Missouri's confidentiality statute makes information confidential *and*

---

[2] The Circuit Court of Cole County found that there was no significant possibility of success on the claim that Missouri's confidentiality statute did not apply to suppliers of lethal chemicals, in a suit for a stay of execution. *See* Exhibit 5, *Winfield v. Lombardi*, 14AC-CC00263 (Cir. Ct. Cole County, Jun.

12

prohibits producing the record "subject to discovery, subpoena, or other means of legal compulsion...." Mo. Rev. Stat. § 546.720.2. Further, there is no statutory carve out provision. Thus, Missouri's confidentiality statute avoids the exceptions in both *Nichols* and *Daugherty*. Missouri courts would conclude, therefore, that the confidentiality statute creates a privilege.

## 2. Step two: the confidentiality privilege is meritorious because it facilitates the enforcement of Missouri law.

The second inquiry is whether the privilege is meritorious in the eyes of the federal courts. *Hampers*, 651 F.2d at 21–23; *Finch*, 638 F.2d at 1343. *Hampers* and *Finch* describe a four part test. First, did the communications originate in a confidence that they will not be disclosed? Second, is this element of confidentiality essential to the full and satisfactory maintenance of the relation between the parties? Third, is the relationship one that "ought to be sedulously fostered?" And fourth, does the injury to the parties "outweigh the benefit gained for the correct disposal of litigation?" *Hampers*, 651 F.2d at 22–23; *citing Finch*, 638 F.2d at 1344; *quoting* 8 J. Wigmore, Evidence § 2258, at 527 (McNaughton rev. 1961). This is not a question the Eighth Circuit has addressed. However, the Eighth Circuit would likely find

---

2014). The Circuit Court of Cole County recently took the opposite position in other suits under Missouri's sunshine law, but stayed its order so the State could file an appeal. *See, e.g.*, *Bray v. Lombardi*, 14AC-CC00044 (Cir. Ct. Cole County, Mar. 2016).

13

the privilege meritorious, drawing on the cases cited by the Eighth Circuit in *Lombardi*.

First, the communications were made in confidence. The communications Jordan and Chase seek all occurred *after* Missouri passed its confidentiality statute. Jordan and Chase seek documents from 2010 onward. See Exhibit 1. Missouri's confidentially statute became effective August 28, 2007—years earlier. Mo. Rev. Stat. § 546.720.2.

Second, confidentiality is necessary to maintain the relationship between Missouri and the members of the execution team. Keeping the identities of Missouri's execution team members confidential is of utmost importance to both Missouri and the members of the execution team. As Director Lombardi explained, protecting the identities of execution team members and the suppliers of lethal chemicals is "critical." Exhibit 2. And as this Court knows, if the identities are revealed there is a "substantial risk that they will be subjected to harassments and invasions of privacy." *Ringo*, 09-4095-CV-C-BP, Order Denying Motion to Unseal at *10. When execution team members and suppliers are threatened, then that would "compromise the State's ability to perform its governmental functions." *Id*.

Third, Missouri, not a federal court in Mississippi, is in the best position to determine the community's interest. The Supreme Court has recently reaffirmed that the death penalty is constitutional, and there must

14

be some method to carry it out. *Glossip*, 135 S. Ct. at 2732–33. Missouri follows a representative form of government, and has enacted laws that allow capital punishment, and provide a means to carry it out. Those laws have withstood constitutional challenge. *See, e.g. Taylor v. Crawford*, 487 F.3d 1072 (8th Cir. 2007); *Ringo v. Lombardi*, 677 F.3d 793 (8th Cir. 2012); *Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015) (en banc). Missourians, as a community, have chosen to enact and enforce capital punishment. The continued enforcement of Missouri's laws is in the community's best interests.

Fourth, any benefit from enforcing Jordan and Chase's subpoena would be *de minimus*. In contrast, Missouri, execution team members, and Mississippi would be harmed. Providing the documents to Jordan and Chase would do little, if anything, to aid them in avoiding their lawful sentence because proving that Missouri has access to pentobarbital does not prove that Mississippi does.

Moreover, Jordan and Chase are essentially seeking to punish Missouri *and* Mississippi for Missouri's diligent efforts to carry out the death penalty. Missouri has conducted 19 rapid and painless executions since October 2013. *See* Exhibit 2; *see also* Exhibit 3 (witness statements from the 19 rapid and painless executions). Jordan and Chase intend to gain information from Missouri so they can force Mississippi to change its execution protocols. Of

15

course, revealing the information will lead to disrupting the confidentiality necessary to carry out capital punishment in Missouri. And federal law protects the privacy of non-parties when, as here, the information is irrelevant to any claim or defense. *See Premium Serv. Corp. v. Sperry & Hutchinson Co.,* 511 F.2d 225, 229 (9th Cir. 1975).

Providing the documents to Jordan and Chase will reveal the identities of Missouri's execution team (including the lethal chemical supplier). Revealing the identities will prevent Missouri *and* Mississippi from enforcing their criminal laws. Not only is there a substantial harm to Missouri from producing the documents, but "success" for Jordan and Chase—frustrating *two* sovereign states—is no benefit to anyone.

In sum, a privilege exists under the two-step test in *Hampers* and *Finch* because Missouri courts would recognize that Missouri law specifically creates the privilege and because the federal courts should find it to be a meritorious privilege. Missouri law creates a privilege this Court should enforce.

**B.    The common law state secrets privilege protects Missouri from disclosing information about execution team members and lethal chemicals.**

Jordan and Chase are seeking documents that would likely reveal the identities of execution team members. If the identities are revealed,

16

Missouri's ability to enforce the death penalty will be endangered. The state secrets privilege is designed to protect official information from disclosure when disclosing the information would endanger the public interest. *United States v. Reynolds*, 345 U.S. 1, 5–6 (1953). Protecting official information is necessary when "disclosure would so seriously hamper the operation of government that [it] should be kept secret...." *Siegfried v. City of Easton*, 146 F.R.D. 98, 101 (E.D. Pa. 1992) (referring to the privilege as "executive privilege"). Such is the case here.

To invoke the privilege the government must assert it. *Reynolds*, 345 U.S. at 5. The head of the department with control over the matter must invoke the privilege after personal consideration. *Id*. The court must then determine whether the privilege is appropriate without forcing disclosure of the thing the privilege has been invoked to protect. *Id*.

The privilege may be invoked in federal courts by States. *See, e.g., Taylor v. Nix*, 451 F. Supp.2d 1351 (N.D. Ga. Sept. 13, 2006), *affirmed in Taylor v. Nix*, 240 Fed. Appx. 830 (11th Cir. 2007) (unpublished) (invoked by State Department of Corrections); *Pack v. Beyer*, 157 F.R.D. 226 (D. N.J. Apr. 5, 1994) (same); *Kerr v. United States District Court for the Northern District of California*, 511 F.2d 192, 198–99 (9th Cir. 1975) (allowing invocation, but finding that California did not satisfy the requirements); *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006) (recognizing that Georgia state law makes

17

certain documents state secrets); *Carr v. Monroe Mfg. Co.*, 431 F.2d 384, 388 (5th Cir. 1970) (recognizing that the Mississippi State Employment Security Commission could invoke state secrets but was not entitled to the privilege).

Missouri has invoked the privilege. Exhibit 2. Director Lombardi is the head of the department with control over executions, and has invoked the privilege after personal consideration. Exhibit 2.

Protecting the documents Jordan and Chase seek is necessary because disclosing the documents is likely to endanger execution team members and is likely to interfere with Missouri's ability to carry out the death penalty. The Director notes that revealing the identities of any execution team member, or records that could reveal their identities, would expose those individuals to harassment, intimidation, and harm. One of the Director's concerns is for the personal and professional safety and well-being of the members of the execution team who provide direct support by providing lethal chemicals, as well as their family members. Specifically, the Director notes that identifying these members of the execution team would prevent the Department from acquiring proper chemicals, and it would prevent the Department from employing and contracting with necessary individuals. Moreover, the Director states that revealing the identities of execution team members jeopardizes public safety and the security of the correctional institutions.

18

As the Director points out, other states have experienced problems in carrying out their lawful obligations after chemical manufacturers and suppliers were harassed and intimidated. Exhibit 2. In addition to the personal safety concerns of the execution team members, the Director is concerned about the security of correctional institutions.

This Court was presented with these arguments in a similar case, and concluded that:

> if the identity of execution team members is compromised there is a substantial risk that they will be subjected to harassments and invasions of privacy. The Court further finds that this outcome would compromise the State's ability to perform its governmental functions.

*Ringo*, 09-4095-CV-C-BP, Order Denying Motion to Unseal at *10. Other jurists have reached the same conclusion as this Court. *See Thompson v. Department of Corrections*, 18 P.3d 1198, 1207 (Cal. 2001) (excluding religious advisor from execution chamber to protect team member's identities); *Bryan v. State*, 753 So.2d 1244, 1250 (Fla. 2000) (holding that preventing disclosure of execution team identities was valid in order to protect security of the prison); *Landrigan v. Brewer,* 625 F.3d 1132, 1143 (9th Cir. 2010) (Kozinski, C.J., dissenting from denial of rehearing en banc) ("Certainly Arizona has a legitimate interest in avoiding a public attack on its private drug manufacturing sources....").

19

Further still, law review articles have also found that threats, harassment, and intimidation are the goals of this "guerrilla war." *See, e.g.,* Mary D. Fan, *The Supply-Side Attack on Lethal Injection and the Rise of Execution Secrecy*, 95 B.U. L. Rev. 427, 429–30, 438–41 (Mar. 2015). The subpoena should be quashed because there is a real, substantial risk that providing the documents will so hamper Missouri's ability to carry out its law.

This Court should allow Missouri to withhold the documents. Jordan and Chase are seeking documents that would reveal the identities of execution team members. Director Lombardi has reviewed Jordan and Chase's requests, and has determined that providing the documents would impair Missouri's ability to carry out its lawful judgements. Moreover, the Director is right. Accordingly, the state secrets privilege protects the requested documents.

**C.    The common law deliberative process privilege protects Missouri from disclosing documents concerning pre-decision research about which lethal chemical to use in Missouri executions.**

In their requests, Jordan and Chase seek documents relating to inquiries made by other states, and inquiries and efforts Missouri made to obtain lethal chemicals. Exhibit 1, p. 6, 11–12. Any documents that are

20

responsive to those requests were generated during the Department's process of deciding which—if any—lethal chemical to use in Missouri's execution. Some documents may contain only factual information. However, because of the unique nature of lethal injection procedures, even those documents were part of this deliberative process. Accordingly, Missouri may withhold responsive documents under the deliberative process privilege.

There is uniformity among the cases with respect to what the elements of the deliberative process privilege are. First, the documents at issue must be predecisional; that is, before the policy decision. Second, the documents must be deliberative; that is, they must be part of the policy deliberation. Third, they must not "memorialize or evidence" the final policy decision. Fourth, they must not have been shared with the public. And fifth, they must not be capable of being shared in a redacted form. *Landry v. F.D.I.C.*, 204 F.3d 1125, 1135 (D.C. Cir. 2000).

"The purpose of the deliberative process privilege is to allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." *State of Missouri ex rel. Shorr v. United States Army Corps of Engineers*, 147 F.3d 708, 710 (8th Cir. 1998).[3]

---

[3] *Shorr* is a case arising under the FOIA. However, FOIA exemption 5 was a codification of the common law deliberative process privilege. *See N.R.L.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 150–151 (1975).

21

The responsive documents were all documents that were created *before* the pentobarbital protocol, and therefore, before the decision to use pentobarbital was made. The documents are predecisional because the information was used to make the policy decision to use pentobarbital. From 2011 onward, the Department was engaged in the process of researching, evaluating, and deciding which lethal chemical(s) to use in lawful executions. It was necessary for the Department to engage in that process because death penalty abolitionists, like Jordan and Chase, had taken "the battle to the market" in an effort to cut off the supply of lethal chemicals. Mary D. Fan, *The Supply-Side Attack on Lethal Injection and the Rise of Execution Secrecy*, 95 B.U. L. Rev. at 436 (Mar. 2015).

Accordingly, in order to determine, as a policy matter, which lethal chemical to use, the Department needed to make inquiries into which lethal chemicals were *available*. True, availability of a lethal chemical is a factual issue. But factual material falls within the decisional prong if the factual material is so "inextricably intertwined" with the policy deliberation that disclosure would reveal the deliberations. *Huthnance v. District of Columbia*, 268 F.R.D. 120 (D. D.C. Jun. 15, 2010).

Factual material is "inextricably intertwined" when the collection of facts themselves will reveal the decision making process of the agency. As such, it is a fact specific inquiry. In the case below, the factual materials were

inextricably intertwined because the agency could not go through the agency process without the documents and their factual information.

In *National Wildlife Federation v. United States Forest Service*, 861 F.2d 1114 (9th Cir. 1988), an advocacy group sought working plans, drafts, and "previews" (comments, criticisms, and recommendations) of a forest plan. *National Wildlife Federation*, 861 F.2d at 1115.[4] National Wildlife argued that the documents they requested were merely "factual" and so were not covered by the deliberative process privilege. *Id.* at 1117. The Ninth Circuit explained that when "the content of a document is factual, if disclosure of the document would expose the decision-making process itself to public scrutiny by revealing the agency's evaluation and analysis of the multitudinous facts" then the document is protected from disclosure. *Id.* at 1118, *quoting Montrose Chemical Corp. of California v. Train*, 491 F.2d 63, 71 (D.C. Cir. 1974). In this way, the fact or opinion dichotomy is not as relevant as whether the document was part of the agency process. *Id.* at 1121.

The documents that Jordan and Chase requested, and for which the Director is invoking privilege, are not the mere memorialization of the Department's final policy. Certainly, the document that memorializes the

---

[4] *National Wildlife Federation* is also a FOIA case, but its interpretation of FOIA exemption 5 applies to the common law privilege because exemption 5 is a codification of that privilege. *See, e.g. In re Sealed Case*, 121 F.3d 729, 737 (D.C. Cir. 1997).

23

Department's final policy—the execution protocol—is not covered by the deliberative process privilege. Further, the Director is not invoking the deliberative process privilege with respect to any documents that have been made public.

Finally, the documents at issue here are not capable of being shared in a redacted form. The Director has reviewed all of the documents over which privilege is being asserted. Exhibit 2. It is not possible to produce redacted documents in this case because the only information that Jordan and Chase is seeking is information that would be redacted. Thus, providing redacted documents to Jordan and Chase would not assist them, and would open the possibility of "other interested parties" attempting to use the redacted documents to uncover the identities of members of the execution team.

In sum, Missouri has demonstrated that responsive documents are protected by the deliberative process privilege. Jordan and Chase are seeking documents relating to inquiries made by other states, and inquiries and efforts Missouri made to obtain lethal chemicals. Exhibit 1, p. 6, 11–12. Any documents that are responsive were generated during the Department's process of deciding which—if any—lethal chemical to use in Missouri's execution. Further, they were generated for the purpose of reaching a policy decision regarding what, if any, lethal chemicals should be used in Missouri.

As such, they are protected, and this Court should allow Missouri to withhold the documents.

## V. Jordan and Chase's subpoena is an undue burden on the State of Missouri.

Rule 45 also requires a court to grant a motion to quash when a subpoena imposes an undue burden on the recipient. The cases establish that undue burden analysis is a multi-factor balancing test that considers (1) the relevancy of the requested information; (2) whether the harm to the person from whom the discovery is sought outweighs the need of the person seeking the information; and (3) the "special factor" of the "unwanted burden thrust upon non-parties." *Enviropack Corp. v. Zenfinity Capital, LLC,* 2014 WL 4715384, 4:14-CV-00754-ERW slip op. at *5 (E.D. Mo. Sept. 22, 2014), *quoting Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999).   In this case, the subpoena forces an undue burden on Missouri because the subpoena seeks non-relevant information, and because the subpoena places a unique burden on Missouri.

### A. Missouri's method of execution is irrelevant to Mississippi's challenged method of execution.

The relevancy test for a non-party subpoena is the same as the relevancy test for discovery under Rule 26(b)(1). The request material must be relevant to some claim or defense. Rule 26(b)(1). The 2015 amendment to

25

Rule 26 removed the language "reasonably calculated to lead to the discovery of admissible evidence" from the rule because it was being incorrectly used to define the scope of discovery. Rule 26(b)(1) committee note. Federal Rule of Evidence 401 explains that relevant evidence is evidence that "has a tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." While the discovery test is broader than the admissibility test, the rules do not entitle litigants to a "fishing expedition." *Hodges v. Pfizer*, 2016 WL 1222229, No. 14-4855-ADM-TNL slip op. *2 (D. Minn. Mar. 28, 2016), *citing Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 380 (8th Cir. 1992).

In this case, the subpoena seeks information that is simply not relevant to Jordan and Chase's claim that *Mississippi*'s method of execution is unconstitutional. The subpoena primarily seeks information from Missouri that will (1) reveal the identities of execution team members, (2) reveal the source of Missouri's lethal chemical, and (3) reveal why Missouri adopted a particular method of execution. Jordan and Chase must argue that this information would be relevant to either their requirement to produce a "known and available" or a "feasible and readily implemented" alternative method of execution. *Glossip v. Gross*, 135 S. Ct. 2726, 2737–38 (2015).

However, Missouri's ability to carry out lawful executions depends on Missouri's ability to protect the identities of its execution team members, and

26

the source of its lethal chemical. So, Missouri's method of execution is "known and available" only to Missouri. If federal courts force Missouri to reveal this information to third parties, then Missouri will lose its execution team members and Missouri will lose its source of lethal chemical. In short, if the method of execution becomes known to Mississippi and Jordan and Chase, then it will not be available to them. Moreover, if the source of the lethal chemical or the identity of the execution team is revealed, then Missouri's method of execution will be neither feasible nor readily available. Thus, the information Jordan and Chase have requested cannot be relevant.

### B.     The subpoena places a unique burden on Missouri.

When federal courts consider a claim of undue burden, two additional factors they examine are whether the harm to the person from whom the discovery is sought outweighs the need of the person seeking the information; and the "special factor" of the "unwanted burden thrust upon non-parties." *Enviropack Corp. v. Zenfinity Capital, LLC,* 2014 WL 4715384, 4:14-CV-00754-ERW slip op. at *5 (E.D. Mo. Sept. 22, 2014), *quoting Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2,* 197 F.3d 922, 925 (8th Cir. 1999). In this case, both factors weigh heavily in favor of quashing the subpoena.

First, Missouri and its citizens would be harmed if this Court forces Missouri to comply with the subpoena. As argued *supra*, compliance will

result in revealing the identity of execution team members and the source of Missouri's lethal chemical. And, as discussed in the sovereign immunity argument, that would substantially interfere with Missouri's proper and lawful use of its police power. Jordan and Chase should not be allowed to use a federal court's power to interfere with a procedure they are not—and never will be—subject to.

Second, as the Eighth Circuit has recognized, non-parties are especially burdened by subpoena requests. *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999). In *Miscellaneous Docket Matter*, the non-party subpoena was served on a former CEO of the defendant company. *Id*. at 923–24. The non-party asserted, among other things, that his right to privacy would be violated by the deposition. *Id*. at 924–25. The district court agreed and quashed the subpoena, and the Eighth Circuit affirmed. *Id*. The Eighth Circuit noted the Supreme Court's guidance that discovery can infringe on privacy rights, and explained that discovery is inappropriate when used to "harass and embarrass." *Id*. at 926.

In this case, much more is at stake than mere embarrassment. This Court has already found that revealing the identities has the serious potential to expose them to threats and harassment, and will compromise Missouri's ability to carry out its lawful obligations. *Ringo*, 09-4095-CV-C-BP,

28

Order Denying Motion to Unseal at *10. Moreover, unlike Ringo, *Missouri is not even a party to this suit*. This special factor weighs heavily in favor of quashing the subpoena.

## Conclusion

Wherefore, for the forgoing reasons, Missouri respectfully requests that this Court quash the subpoena absolutely on sovereign immunity grounds and as unduly burdensome. In the alternative, Missouri respectfully requests that this Court allow Missouri to withhold the documents that are protected under Missouri's confidentiality statute; under the common law state secrets privilege; and under the common law deliberative process privilege.

Respectfully submitted,

**CHRIS KOSTER**
Attorney General

/s/ *Gregory M. Goodwin*
GREGORY M. GOODWIN
Assistant Attorney General
Missouri Bar # 65929
P.O. Box 899
Jefferson City, MO 65102
(573) 751-7017
(573) 751-3825 Fax
gregory.goodwin@ago.mo.gov
Attorneys for Missouri

29

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically filed by using the CM/ECF system this 9 day of June, 2016. I hereby further certify that I have e-mailed a copy of the forgoing to:

James W. Craig, MSB # 7798
The Roderick & Solange MacArthur Justice Center
4400 South Carrollton Ave.
New Orleans, LA 70119
(504) 620-2259 (p)
(504) 208-3133 (f)
jim.craig@macarthurjustice.org

Paul E. Barnes
Office of the Attorney General
P.O. Box 220, Jackson MS 39205
pabarn@ago.state.us.ms


*/s/ Gregory M. Goodwin*

30