# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| MISSOURI DEPARTMENT OF CORRECTIONS, ) ) ) Movant, ) ) ) v. ) ) RICHARD JORDAN and ) RICKY CHASE, ) ) Respondents. ) | Case No. 16-MC-09005-SRB<br><br>Related: 3:15-CV-00295<br>(S.D. Miss.) |

## ORDER

Before the Court is Motion to Quash Third-Party Subpoena (Doc. #1) filed by Movant/subpoena-recipient Missouri Department of Corrections. Based upon consideration of the parties' written filings and the arguments made at the in-person hearing on July 1, 2016, and for the reasons stated more fully below, the motion is DENIED.

### I.      Background

Respondents Jordan and Chase are Mississippi death-row inmates who Mississippi proposes to execute by the serial intravenous injection of three drugs: midazolam, vecuronium bromide (a chemical paralytic agent), and potassium chloride. In a case presently pending in Mississippi federal court, Respondents are challenging their proposed executions as cruel and unusual punishment under the Eighth Amendment. In their Mississippi federal case, Respondents survived a motion to dismiss and are now actively engaged in discovery and moving toward trial.

Movant admits that it has employed a single-drug protocol using pentobarbital in its most recent executions. In an effort to satisfy their evidentiary burden to plead and prove the

existence of "a known and available alternative method of execution," *Glossip v. Gross*, 135 S.Ct. 2726, 2738 (2015), Respondents served on Movant a subpoena for documents and a Federal Rule of Civil Procedure 30(b)(6) deposition focused on: "(1) the availability of pentobarbital; (2) the factors considered in determining to abandon the three-drug protocol; and (3) the feasibility of the single-drug protocol as an alternative method of execution." (Doc. #16, p. 5).

Movant agreed to produce only a public copy of Missouri's execution protocol and asks the Court to quash the subpoena in its entirety. Movant raises three primary arguments in favor of quashing the subpoena: 1) sovereign immunity prevents enforcement of the subpoena; 2) enforcement of the subpoena would pose an undue burden on the State of Missouri; and 3) the subpoena requests information that is privileged pursuant to Missouri statute, the common law state secrets privilege, and the common law deliberative process privilege. None of Movant's arguments require quashing the subpoena.

## II. Legal Standard

Federal Rule of Civil Procedure 45 governs subpoenas. Movant does not challenge Respondents' method of serving the subpoena or the timeframe for responding. Rather, Movant challenges the propriety of Respondents' requests. In relevant part Rule 45(d)(3) provides "the Court for the district where compliance is required must quash or modify a subpoena that: . . . (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."

## III. Discussion

During the July 1 hearing, the Court and Respondents' counsel discussed in detail modifications to Respondents' document requests, particularly a narrowing of the requests. As a

2

result of this discussion, Respondents' counsel distilled the subpoena requests to five categories of documents:

1. Documents that identify the supplier(s) of all pentobarbital (either Nembutal or pentobarbital compounded from API) purchased for use in executions in Missouri;

2. Documents that identify whether each amount of pentobarbital purchased for use in executions in Missouri was a manufactured or compounded drug;

3. Documents that identify the process by which any supplier or other entity determined the purity and/or integrity of each amount of pentobarbital purchased for use in executions in Missouri;

4. Documents that identify the proper administration of each amount of pentobarbital purchased for use in executions in Missouri, whether from the supplier(s) or any other entity; and

5. Documents regarding why the decision was made to change to a single lethal dose of barbiturate rather than a three-drug series including the use of a paralytic agent and potassium chloride, and/or regarding the process by which such decision was made.

(Tr. July 1, 2016, Hearing pp. 42, 46).

Though the discussion between Respondents' counsel and the Court focused on document requests, the same narrowing applies to the Rule 30(b)(6) deposition notice included with the subpoena. Neither party argued that a different analysis applies to the document requests versus the Rule 30(b)(6) deposition notice. Therefore, the Court will consider Movant's arguments in favor of quashing the subpoena in the context of the preceding five categories of

3

information requests – *i.e.* the document requests as listed as well as requests for Rule 30(b)(6) testimony on the same topics – to which Respondents agreed.[1]

## A. Sovereign Immunity

Movant argues it is protected by sovereign immunity because Respondents' information requests threaten Missouri's autonomy by interfering with Missouri's ability to conduct lawful executions. (Doc. #3, p. 9). After recognizing that "no court has considered a sovereign immunity defense from a subpoena that seeks confidential information and documents about lethal chemicals used in executions[,]" Movant directs the Court to *Alltel Commc'ns, LLC. v. DeJordy*, 675 F.3d 1100 (8th Cir. 2012), and *In re Missouri Dep't. of Natural Resources*, 105 F.3d 434 (8th Cir. 1997) (*MDNR*), and asks the Court to infer from the language therein "that sovereign immunity protection is appropriate when Missouri shows '"how production of these documents infringes on the State of Missouri's autonomy."'" (Doc. #3, pp. 11, 13) (citing *MDNR*, 105 F.3d at 436). The Court declines to infer such an expansion of clear Eighth Circuit precedent.

In MDNR, the Eighth Circuit denied mandamus relief to MDNR after the district court denied MDNR's motion to quash a third-party subpoena upon finding that the Eleventh Amendment did not shield MDNR from discovery in federal court. The Eighth Circuit held, "There is simply no authority for the position that the Eleventh Amendment shields government entities from discovery in federal court." *MDNR*, 105 F.3d at 436. In *Alltel* the Eighth Circuit found that tribal immunity prevented an Indian tribe and leader from having to respond to a third-party subpoena. 675 F.3d at 1106. In so holding the Eighth Circuit recognized that if it

---

[1] Movant does not state any specific objection to the timeframe stated in the subpoena (2010 to present) nor to the definitions used in the subpoena. Accordingly, the Court finds both to be appropriate unless otherwise modified herein.

4

sided with the Tribe, "tribal immunity, a federal common law doctrine, may well confer greater immunity than that enjoyed by . . . *the States*, whose sovereign immunity is protected by the Eleventh Amendment." *Id.* at 1104 (citing *MDNR*, 105 F.3d at 436) (emphasis added). The Court simply cannot read *MDNR* and *Alltel* to hold that sovereign immunity may protect states from having to respond to third-party subpoenas.

Movant focuses primarily on the following statement in *Alltel*: "[G]iven the public policy underlying sovereign immunity summarized in the above-quoted portion of the opinion in [*Larson v. Domestic & Foreign Corp.*, 337 U.S. 682, 704 (1949)], we are unwilling to predict how the Supreme Court would decide a case in which disruptive third-party subpoenas that would clearly be barred in a State's own courts are served on a state agency in private federal court civil litigation." 675 F.3d at 1104-05. Clearly, the preceding statement makes no pronouncement of law, but even if it did, the Court finds that this case does not meet the criteria contemplated in *Alltel*. The level of disruption predicted by Movant is unproven as discussed more fully in Part B below. Further, it is far from a foregone conclusion that Respondents' subpoena would be barred by a Missouri court given that a Cole County Circuit Court Judge recently ordered production of "records identifying the source of lethal chemicals in [Movant's] possession, the results of quality tests on such chemicals, the qualifications of those involved in procurement, testing or administration of lethal chemicals, and policy statements, regulations or memoranda reflecting the assessment of approval of drugs for use in executions." *Guardian News & Media, LLC, et al. v. Missouri Dep't. of Corrections*, Case No. 14AC-CC00251, at *9 (March 21, 2016). The Eleventh Amendment does not shield Movant from Respondents' information requests.

5

### B. Undue Burden

Movant next argues that the subpoena should be quashed because it poses an undue burden on the State of Missouri. "In determining whether a subpoena poses an undue burden, the court should balance the relevance of the testimony sought and the requesting party's need for the testimony against the potential hardship to the party subject to the subpoena." *Tyler v. Rahe*, No. 08-CV-00129-DW, 2014 WL 1875257, at *1 (W.D. Mo. May 9, 2014) (citations omitted). "The burden of proving that a subpoena poses an undue burden rests with the party moving to quash and is a heavy one." *Id.* (citations omitted). "'[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.'" *Enviropak Corp. v. Zenfinity Cap., LLC*, No. 4:14-CV-00754-ERW, 2014 WL 4715384, at *5 (E.D. Mo. Sept. 22, 2014) (quoting *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 925 (8th Cir. 1999)).

#### 1. Relevance

The Court finds Respondents' information requests are directly relevant to Respondents' Mississippi federal case. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). In *Glossip*, the Supreme Court agreed with the Eighth Circuit's decision in *Zink v. Lombardi*, 783 F.3d 1089 (8th Cir. 2015), and held that prisoners asserting an Eighth Amendment challenge to a state's method of execution must "satisfy their burden of establishing that any risk of harm was substantial when compared to a known and available alternative method of execution." 135 S.Ct. at 2738. Accordingly, Respondents' federal complaint identifies Missouri's use of pentobarbital as a "feasible and available" alternative. (Doc. #16, p. 10) (quoting Ex. 1, pp. 34-35). Furthermore, the Mississippi Defendants served interrogatories

6

on Respondents requesting identification of "each duly licensed pharmacy, compounding pharmacy, or other supplier from which Defendants can legally obtain a FDA-approved form of [pentobarbital] for use in executions."  (Doc. #16, p. 11) (quoting Ex. 7, p. 7).  Other examples of how Respondents' information requests are relevant to the disputed issues in their federal case, i.e. the availability of pentobarbital and the feasibility of a one-drug execution protocol, are provided in Respondents' briefing.  (Doc. #16, pp. 8-15).

Movant challenges the relevance of Respondents' information requests:

> If federal courts force Missouri to reveal this information to third parties, then Missouri will lose its execution team members and Missouri will lose its source of lethal chemical.  In short, if the method of execution becomes known to Mississippi and Jordan and Chase, then it will not be available to them. Moreover, if the source of the lethal chemical or the identity of the execution team is revealed, then Missouri's method of execution will be neither feasible nor readily available.  Thus, the information Jordan and Chase have requested cannot be relevant.

(Doc. #3, p. 33).  Movant's arguments fail on this record.  Initially, Movant assumes that pentobarbital suppliers are "execution team members," but this Court finds as stated more fully in Part 3 below that the Missouri Supreme Court would construe Mo. Rev. Stat. § 546.720.2 to not include suppliers as part of the "execution team" defined in the statute.  Even so, there is no admissible evidence in the record before the Court to establish that if Missouri's pentobarbital supplier is revealed to Respondents, the supplier will no longer sell pentobarbital to Missouri or another state.

In support of its argument that the name of Missouri's pentobarbital supplier would not be relevant to Respondents because identification of the supplier would cause the supplier to stop supplying pentobarbital, Movant relies on Director Lombardi's affidavit.  Director Lombardi attests, "It has been widely reported by the news media that many manufacturers and suppliers have, under pressure from death-penalty opponents, refused to sell or manufacture lethal

7

chemicals for use in lawful executions. In my experience, this has been because manufacturers and suppliers fear financial, legal, and physical threats from those who oppose the death penalty." (Doc. #1-2, ¶ 4). Director Lombardi's statements are general and do not refer to Missouri's actual supplier. Director Lombardi further attests, "The only suppliers the Department found that will provide the chemicals require the assurance of confidentiality." (Doc. #1-2, ¶ 5). Director Lombardi's statement is a bare, hearsay assertion unsupported by record evidence. Director Lombardi does not refer the Court to any agreement between the Department and supplier requiring confidentiality. This hearsay statement is insufficient to establish that Missouri's supplier will no longer supply pentobarbital to Missouri if identified to Respondents. Respondents' information requests are relevant to their Mississippi federal case, and Movant's arguments to the contrary fail on this record.

**2. Respondents' Need Versus Movant's Potential Hardship**

Movant's counsel opened the July 1 hearing with the following statement, "Your Honor, what's at stake in this litigation is nothing less than Missouri's ability to continue to carry out capital punishment." (Tr. p. 5, lines 2-4). No record evidence establishes such a potential hardship to Missouri. For the reasons already detailed, Director Lombardi's affidavit does not establish that Missouri's supplier of pentobarbital would stop supplying the drug if its identity is revealed to Respondents. Furthermore, no record evidence establishes that Movant would be unable to locate another source of pentobarbital even if the present supplier stopped supplying the drug.

Judge Beteem, Circuit Court Judge in Cole County, Missouri, has handled several cases involving similar issues in the context of Movant's refusal to produce many of the same documents at issue here in response to Missouri Sunshine Law requests. *Guardian News*, *supra*,

8

p. 5; *Bray v. Lombardi, et al.*, Case No. 14AC-CC00044, at *1-2 (Cole Cty. Circuit Court March 25, 2016) (ordering production of "requested records . . . relating to pharmacies and laboratories that compound, supply and test the drugs used to carry out executions in Missouri" but staying obligation to comply until final); *Winfield v. Lombardi*, Case No. 14AC-CC00263, at *2 (Cole Cty. Circuit Court June 6, 2014) (denying motion to enforce Sunshine Law request by preliminary injunction based on finding a low likelihood of success on the merits but stating "this order is not to be construed as a finding to that effect"). On July 15, 2015, Judge Beteem issued a summary judgment order in *Guardian News* making the following fact finding, "The State of Missouri can, as proposed by [the Department's] own counsel, Attorney General Chris Koster, explore establishing its own laboratory to produce chemicals for use in lethal injection executions as an alternative to keeping the identity of the providers secret." Case No. 14AC-CC00251, at *6 (July 15, 2015) (Doc. #25-1, p. 6, ¶ 2). The Court finds Movant's purported hardship is unfounded based on record evidence.

In contrast, Respondents' need for the information is tangible, established, and immediate. Respondents allege in their federal case that Missouri's use of pentobarbital represents a "feasible and readily implemented" alternative to Mississippi's three-drug protocol. It is publicly known that Missouri has used pentobarbital in its most recent executions, but without information responsive to Respondents' information requests as narrowed herein, Respondents will be unable to carry their evidentiary burden in the Mississippi federal case.

In finding that Respondents' information requests do not pose an undue burden on Movant, the Court gives due weight to the fact that Movant is a non-party to the Mississippi federal case. Movant argues that Judge Phillips in *Ringo v. Lombardi*, Case No. 09-CV-4095-BP (Doc. #317), held that "revealing the identities has the serious potential to expose them to

9

threats and harassment, and will compromise Missouri's ability to carry out its lawful obligations." (Doc. #3, p. 34). Movant argues that the Court must consider this holding as evidence of the unwanted burden thrust upon Missouri as a non-party to the Mississippi suit. *Id.* While there are numerous differences between the *Ringo* case and this one, three differences are of primary importance. First, Respondents' interest weighed against any potential harm to Movant is greater in this case than in *Ringo* where Intervenor did not have evidentiary burdens it was attempting to satisfy. Second, *Ringo* concerned the identity of an anesthesiologist who is present at executions and a member of the "execution team" whereas Missouri's pentobarbital supplier is not part of the "execution team" as described in Part 3 below. Finally the evidentiary record before this Court is different than the record before Judge Phillips in *Ringo* making a direct comparison inappropriate. Movant has not carried its burden to establish that Respondents' information requests pose an undue burden on Movant.

## C. Privilege

Movant argues three separate privileges shield it from providing information responsive to Respondents' information requests: 1) a privilege derived directly from Mo. Rev. Stat. § 546.720.2; 2) the federal common law state secrets privilege; and 3) the federal common law deliberative process privilege.

### 1. Mo. Rev. Stat. § 546.720.2

Movant asks the Court to find that section 546.720.2 creates a privilege against production in federal court. Movant argues that "[t]he Eighth Circuit has explained that federal courts undertake a two-step analysis[]" in determining whether a state statute creates a privilege in federal court. (Doc. #3, p. 17). "First, would the state courts recognize that their statute creates a privilege? Second, is the privilege meritorious in the federal court's judgment?" *Id.*

10

(citations omitted). The Court need not decide whether section 546.720.2 creates a privilege, however, because even if it does create a privilege, that privilege only applies to the identities of "execution team" members, and the Court finds the Missouri Supreme Court would hold that pentobarbital suppliers are not "execution team" members.

> Section 546.720.2 provides:
>
> The director of the department of corrections shall select an execution team which shall consist of those persons who administer lethal gas or lethal chemicals and those persons, such as medical personnel, *who provide direct support for the administration of lethal gas or lethal chemicals*. The identities of members of the execution team, as defined in the execution protocol of the department of corrections, shall be kept confidential. Notwithstanding any provision of law to the contrary, any portion of a record that could identify a person as being a current or former member of an execution team shall be privileged and shall not be subject to discovery, subpoena, or other means of legal compulsion for disclosure to any person or entity, the remainder of such record shall not be privileged or closed unless protected from disclosure by law. The section of an execution protocol that directly relates to the administration of lethal gas or lethal chemicals is an open record, the remainder of any execution protocol of the department of corrections is a closed record.

(emphasis added). Movant admits it was not until October 18, 2013, that the director defined "execution team" to include "a pharmacist" and "individuals who prescribe, compound, prepare, or otherwise supply the chemicals for use in the lethal injection procedure." (Doc. #1-2, ¶ 3). Movant has no basis to argue that documents or testimony identifying Missouri's pentobarbital supplier prior to October 18, 2013, are shielded from disclosure. Setting aside that prior to October 18, 2013, the director did not include "a pharmacist" in the definition of "execution team," the Court finds the directors' October definition includes persons beyond the bounds of the statutory language because "a pharmacist" and individuals who supply chemicals for use in lethal injection procedures do not "provide direct support for the administration of lethal gas or lethal chemicals."

11

"In applying state law, federal courts are bound to apply the law of the state as articulated by the state's highest court." *Travelers Prop. Cas. Ins. Co. of Am. v. Nat'l Union Ins. Co. of Pittsburg, PA.*, 621 F.3d 697, 707 (8th Cir. 2010) (citation omitted). "When the state's highest court has not spoken, our job is to predict how the state's highest court would resolve the issue." *Id.* Only one court – state or federal – has decided this issue.

In *Guardian News* Judge Beteem held, "M6 and M7 [each representing two pharmacists who provided pentobarbital for use in executions] are not present during the execution. . . . M6 and M7 do not administer or provide direct support for the administration of lethal injection drugs during executions. . . . M6 and M7 are not members of the execution team." Case No. 14AC-CC00251, at *2-3 (March 21, 2016) (Doc. #16-8, pp. 2-3). The Court further found that a nurse and anesthesiologist who both participate in executions, a physician who prescribes pentobarbital for use in executions, and three non-medical individuals who are present for and participate in executions, are all members of the "execution team." *Id.* at 3. Respondents specifically disclaimed at the July 1 hearing any attempt to obtain information about the identities of any of these individuals. (Tr. p. 67, lines 18-23).

*Guardian News* is not binding on this Court, and as Movant points out, the March 21, 2016, order is not final. Even so, the Court, based on its independent analysis, agrees with Judge Beteem's holding and finds the Missouri Supreme Court would so hold as well. "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider the words used in their plain and ordinary meaning." *Wolff Shoe Co. v. Dir. of Revenue*, 762 S.W.2d 29, 31 (Mo. 1988) (en banc) (citation omitted). "'The plain and ordinary meaning of a word is derived from the dictionary.'" *State ex re. Nixon v. QuikTri Corp.*, 133 S.W.3d 33, 37 (Mo. 2004) (en banc) (quoting *Hemeyer v.*

12

*KRCG-TV*, 6 S.W.3d 880, 881 (Mo. 1999) (en banc)). Merriam-Webster online dictionary defines "direct" when used as an adjective as "stemming immediately from a source" and "marked by absence of an intervening agency, instrumentality, or influence[.]" http://www.merriam-webster.com/dictionary/direct (last visited July 12, 2016). The same dictionary defines "administration" in the medical context as "the act of giving medication[.]" http://www.merriam-webster.com/dictionary/administration#medicalDictionary (last visited July 12, 2016).

Missouri's pentobarbital suppliers do not participate in the act of giving medication nor do they provide immediate support for the act of giving medication. Pentobarbital suppliers do not, therefore, "provide direct support for the administration" of lethal chemicals. Section 546.720.2 does not shield Movant from responding to Respondents' information requests because the requests do not seek information regarding any "execution team" member.

### 2. State Secrets Privilege

Director Lombardi attests, "I have personally determined that it is necessary to invoke the state's secrets privilege with respect to all responsive documents sought by the subpoena." (Doc. #1-2, ¶15). Movant argues, "The state secrets privilege is designed to protect official information from disclosure when disclosing the information would endanger the public interest." (Doc #3, p. 23) (citing *United States v. Reynolds*, 345 U.S. 1, 5-6 (1953)). Movant does not cite any Eighth Circuit cases on this issue. Even so, the Court finds that the cases cited by Movant do not compel the conclusion that the state secrets privilege applies here.

Movant argues, "Protecting the documents Jordan and Chase seek is necessary because disclosing the documents is likely to endanger execution team members and is likely to interfere with Missouri's ability to carry out the death penalty." (Doc. #3, p. 24). Movant's arguments in

favor of applying the state secrets privilege are the same arguments already made in connection with the undue burden argument and Missouri statutory privilege argument. For all the reasons previously discussed, the Court finds Respondents' information requests do not seek identification of any "execution team" members nor is there any evidence in the record before the Court to establish a threat to Missouri's ability to continue carrying out the death penalty. Movant once again refers the Court to *Ringo*, but that case is distinguishable for all the reasons previously outlined.

### 3. Deliberative Process Privilege

Director Lombardi attests, "Furthermore, the subpoena seeks documents that inquire into the process of selecting a lethal chemical for Missouri's current protocol. The responsive documents and testimony contain information that is completely intertwined with the Department's deliberations. As a result, after personal consideration, I am invoking the Deliberative Process Privilege with respect to request for documents 1, 4, 5, 6, 7, and 8 and deposition topics 1, 2, 3, 4, 6, 7, 8, and 9." (Doc. #1-2, ¶ 14). As modified herein the invocation of the deliberative process privilege would apply to document request number five (5) and the corresponding deposition topic.

"The purpose of the deliberative process privilege is to allow agencies freely to explore alternative avenues of action and to engage in internal debates without fear of public scrutiny." *State of Missouri ex rel. Shorr v. United States Army Corps of Engineers*, 147 F.3d 708, 710 (8th Cir. 1998) (citation omitted). The Eastern District of Missouri in analyzing the deliberative process privilege found instructive the First Circuit's decision in *Texas Puerto Rico, Inc. v. Dept. of Consumer Affairs*, which states:

> The Supreme Court has restricted the deliberative process privilege to material that are both predecisional and deliberative. . . . In other words, to qualify

14

for the privilege, a document must be (1) predecisional, that is, "antecedent to the adoption of agency policy," and (2) deliberative, that is, actually "related to the process by which policies are formulated." . . . Because the deliberative process privilege is restricted to the intra-governmental exchange of thoughts that actively contribute to the agency's decisionmaking process, factual statements or post-decisional documents explaining or justifying a decision already made are not shielded.

Even if a document satisfies the criteria for protection under the deliberative process privilege, nondisclosure is not automatic. The privilege "is a qualified one," . . . Thus in determining whether to honor an assertion of privilege, a court must weigh competing interests. . . .

At bottom, then, the deliberative process privilege is "a discretionary one." . . . In deciding how to exercise its discretion, an inquiring court should consider, among other things, the interests of the litigants, society's interest in the accuracy and integrity of factfinding, and the public's interest in honest, effective government. . . .

*Scott v. City of St. Louis*, 196 F.R.D. 551, 555 (E.D. Mo. 2000) (citing *Texas Puerto Rico, Inc. v. Dep't. of Consumer Affairs*, 60 F.3d 867, 884-885 (1st Cir. 1995) (internal citations omitted)). "Other factors to be considered in the exercise of the Court's discretion include the relevance of the evidence, the availability of other evidence, the government's role in the case, and the extent to which disclosure would hinder frank and independent discussion of the pending decision." *Id.* (citation omitted).

As narrowed herein, information request number five (5) seeks documents and deposition testimony regarding Missouri's decision to change to a pentobarbital protocol, including predecisional and deliberative information. In weighing the competing interests, the Court finds that why Missouri chose to change protocols is not as central to Respondents' case as is Missouri's source of pentobarbital, which is necessary for Respondents to carry their burden to establish a "known and available alternative." This lesser (albeit still relevant) interest in the information coupled with the potential of chilling Movant's "frank and independent discussion"

15

of similar issues in the future, leads the Court to conclude that the deliberative process privilege should partially apply in this case.

As previously stated, however, the privilege only covers predecisional information, not "post-decisional documents explaining or justifying a decision already made." To the extent such documents exist, they must be produced to Respondents. Accordingly, information request number five (5) as stated herein is further modified to include documents *from the date the decision was made to present* regarding why the decision was made to change to a single lethal dose of barbiturate rather than a three-drug series including the use of a paralytic agent and potassium chloride, and/or regarding the process by which such decision was made. The corresponding Rule 30(b)(6) deposition topic is similarly narrowed. Further, Movant is directed to serve on Respondents an updated privilege log listing each document withheld on the basis of the deliberative process privilege in sufficient detail to allow Respondents to evaluate the propriety of the privilege claimed.

## IV. Conclusion

For the foregoing reasons, it is hereby ORDERED

1. Movant/subpoena-recipient Missouri Department of Corrections' Motion to Quash Third-Party Subpoena (Doc. #1) is DENIED.
2. Pursuant to Rule 45 and based on Respondents' agreement, Respondents' subpoena is narrowed to include the following five requests: 1) documents that identify the supplier(s) of all pentobarbital (either Nembutal or pentobarbital compounded from API) purchased for use in executions in Missouri; 2) documents that identify whether each amount of pentobarbital purchased for use in executions in Missouri was a manufactured or compounded drug; 3) documents that identify the process by which any supplier or other

entity determined the purity and/or integrity of each amount of pentobarbital purchased for use in executions in Missouri; 4) documents that identify the proper administration of each amount of pentobarbital purchased for use in executions in Missouri, whether from the supplier(s) or any other entity; and 5) documents from the date the decision was made to present regarding why the decision was made to change to a single lethal dose of barbiturate rather than a three-drug series including the use of a paralytic agent and potassium chloride, and/or regarding the process by which such decision was made.

3. Respondents' Rule 30(b)(6) deposition notice is also narrowed to include testimony regarding the five topics listed above.

4. Responsive documents and an updated privilege log should be produced within fourteen (14) days after resolution of any writ of mandamus Movant files with the Eighth Circuit so long as the writ of mandamus is filed within seven (7) business days of the date of this Order. Otherwise, responsive documents and an updated privilege log should be produced within fourteen (14) days of the date of this Order.

5. The Rule 30(b)(6) deposition should take place at a mutually agreeable time and place within fourteen (14) days after responsive documents are produced.

**IT IS SO ORDERED.**

/s/ Stephen R. Bough
STEPHEN R. BOUGH
UNITED STATES DISTRICT JUDGE

Dated: July 14, 2016